APPENDIX IV

DO NOT REMOVE FROM LAW LIBRARY

***RHODE ISLAND PAROLE BOARD***
***POLICY STATEMENT***
***ANNUAL OPEN MEETING***
***MARCH 28, 2006***

***CHAIRPERSON***
*Lisa S. Holley, Esq.*

***VICE CHAIRPERSON***
*Kenneth R. Walker Ed.D.*

***MEMBERS***
*Frederic G. Reamer, Ph.D.*
*Bennett R. Gallo, Esq.*
*Charles Denby II, M.D.*
*Arthur C. Jones, Ph.D.*
*Victoria Almeida, Esq.*

***EXECUTIVE SECRETARY***
*Ann Marie Bolvin*

## RHODE ISLAND PAROLE BOARD
## POLICY STATEMENT AS ADOPTED MARCH 28, 2006

**A.)** The Rhode Island Parole Board will use the following major criteria in determining whether to grant or deny parole:

**1.) SERIOUSNESS OF THE OFFENSE:** It is the policy of the Board to consider the nature and circumstances of the offense, and to determine whether the purposes of retribution and general deterrence have been satisfied. In evaluating the case along this dimension, the Board will be guided by the official version of the offense and the length of the sentence imposed. The Board, however, will also take into consideration the parole candidate's version of the offense. The Board is particularly concerned with offenses which (1) involved a weapon and/or physical injury or possible injury to the victim, and (2) crimes of a repetitive nature, such as a series of burglaries and drug sales, which reflect extensive involvement in crime-oriented activities. A number of mitigating and aggravating factors, including the parole candidate's motivation for committing the offense, his/her role in the offense, the amount of loss and/or injury to the victim, and the degree of sophistication evidenced in the offense, will also be taken into consideration. In general, it is not Board policy to deny parole solely on the basis of the nature and circumstances of the offense; there are, however, certain instances where denial on this basis may be warranted.

**2) PRIOR CRIMINAL RECORD:** In evaluating the parole candidate's prior criminal record, the Board will consider the inmate's prior adult record in order to determine the extent of his/her involvement in crime-oriented activities as well as information of juvenile detention. The Board is primarily concerned with the number of and the seriousness of the inmate's convictions. The Board will also consider the parole candidate's response to prior community supervision, and whether the present offense was committed while on probation or parole. A pattern of continual arrests will be interpreted as an indication that the subject is unlikely to succeed on parole, and is of high risk to reoffend.

Since the evaluation of these factors play an important role in the decision-making process, the Board has adopted guidelines for rating the seriousness of the prior criminal record.

Prior Criminal Record is defined as follows:

**NO** record: No previous convictions.

**MINOR** record:

1) Incarceration only: maximum sentences totaling no more than one year.

DO NOT REMOVE FROM LAW LIBRARY

**MODERATE** record:

1) Incarceration only; maximum sentences totaling more than one year, but no more than 4 years.
2) Prior incarceration, but present sentence is the result of the revocation of felony probation.

**SERIOUS** record:

1) Incarceration only; maximum sentences totaling more than 4 years.

The Board reserves the right to deviate from the guidelines to take into consideration mitigating factors, or aggravating, such as probations, suspended sentences, arrests, and the seriousness and extent of the offenses.

**3) INSTITUTIONAL ADJUSTMENT:** The Board will consider information pertaining to the parole candidate's institutional adjustment. In assessing this factor, the Board will consider the inmate's participation in and response to the programs available to him/her and his/her overall compliance with institutional regulations.

The Board will view negatively any significant institutional disciplinary record and generally will not parole an inmate unless he or she has had no infractions in the prior six months. Any inmate, who is being reconsidered for parole and is in segregation at the time of his or her scheduled parole hearing, shall not be seen by the Board for a minimum of three months. This will not apply to new applicants for initial parole consideration. Although a satisfactory adjustment to prison life will not guarantee that the subject will be paroled, it greatly increases the probability of parole, because obedience to institutional rules is taken as an indication that the candidate will comply with parole conditions. A decidedly poor institutional adjustment will weigh heavily against the potential parolee.

An inmate's ability to progress from higher classifications to lower classifications within the correctional system may be indicative of institutional adjustment. The Board may consider special circumstances that explain why an inmate has not progressed from higher classifications to lower classifications which may include but are not limited to inmates who are in protective custody by their own choice or the decision of the administration. Individuals who choose to remain at higher levels of security to participate in programs in that facility will be given such consideration.

**4) NEGATIVE TERMINATION FROM HOME CONFINEMENT**: Any person confined to Home Confinement pursuant to RIGL § 42-56-20.2 who is found to be a violator of any of the terms and conditions imposed upon him or her shall be ineligible for parole and shall serve the balance of his/her sentence.

DO NOT REMOVE FROM LAW LIBRARY

5) **WORK RELEASE:** The Board will take into consideration an inmate's success or failure while in the work-release program at the Adult Correctional Institution. The Board will interpret success in this program to be indicative of a potential parolee's ability to maintain steady employment and to be successful on parole. Conversely, the Board will interpret failure in this program to be indicative that the potential parolee is unlikely to succeed on parole.

6) **ESCAPE:** Inmates convicted of escape shall wait for a minimum of six months from date of return before being reconsidered for parole, unless there are compelling circumstances. This section shall not apply to initial parole hearings as set forth in statutory provisions.

7) **PSYCHOSOCIAL CHARACTERISTICS:** In evaluating the record on this dimension, the Board will consider information pertaining to the subject's work record, level of education, occupational skills, evidence of his/her emotional stability as contained in recent psychological reports, and whether the prospective parolee has a history of mental hospitalizations. In addition, the Board will consider whether the subject has a history of drug or alcohol abuse, which seriously diminishes the likelihood that the candidate can succeed on parole.

The Board will assess the inmate's participation in the substance abuse treatment programs while at the Adult Correctional Institution and prior to incarceration. The Board will look disfavorably on an inmate who is serving a sentence for drug or alcohol related crimes, or who has a substance abuse history, and fails to participate in treatment programs offered by the Department of Corrections.

Additionally, the board would require that inmates serving a sentence for domestic violence charges be required to successfully complete a domestic violence or violence abatement program prior to being seriously considered for parole.

8) **POLICE, JUDICIAL, AND COMMUNITY INFORMATION:** The probability that an inmate will succeed on parole is greatly diminished if he/she will return to a community that has expressed hostility toward him/her. The Board will seldom deny parole solely on the basis of opposition from official or community representatives. However, evidence that the community and public officials are supportive will increase the probability that the parole candidate will be granted parole.

9) **PAROLE PLAN:** The Board places great emphasis on the appropriateness of the parole plan. In evaluating the parole plan, the Board will consider the strength of the parole candidate's social ties, including whether the subject has a supportive family, resources available in the community, and a job opportunity. It is necessary for prospective parolees to have secure job plans and stable living arrangements upon return to the community, since these factors are strongly

DO NOT REMOVE FROM LAW LIBRARY

related to the successful completion of parole. The board will not grant parole to a candidate who is without a solid residential plan, or who will return to an environment and circumstances, which are likely to contribute to further involvement in crime-oriented activity. In all cases, release on parole is contingent on the submission of a satisfactory parole plan.

**a.)** All parole plans, including those submitted by attorneys, are to be submitted to the Board prior to the first day of the month that the parole candidate is to be seen by the Board. This plan should include an updated job offer, which must be notarized, or on official company stationery; a residence letter, which shall contain the address and phone number of the residence with a brief statement by the occupant indicating a willingness to have the parole candidate reside at that location; and, any or all, supportive letters and certificates of program completion.

**10) REVOCATION OF PAROLE:** The Parole Board considers any violation of the conditions of parole to be a very serious matter. However, after parole revocation, it will be solely up to the discretion of the Parole Board to determine the length of time the inmate will serve prior to being granted a reconsideration of parole.

**a.) EXPEDITED PROCEDURE:** Rhode Island Parole Board will utilize an expedited revocation procedure for parole violations not involving new criminal offenses, where there is no dispute as to the charged violation, and the parolee charged with such violation freely admits to the violation and accepts the appropriate sanction imposed.

**11) SEXUAL OFFENSES & CHILD MOLESTATION:** An individual found guilty of a sexual offense will not generally be seriously considered for parole until he/she has successfully taken part in the Sex Offender Treatment Program. The Board will take the recommendation of the Sex Offender Treatment Program into consideration when evaluating an inmate for potential release on parole.

Additionally, the Board will consider the recommended conditions for release and post-release counseling. All offenders sentenced to the crime of child molestation shall be required to cooperate with the parole board psychiatrist who will complete a comprehensive psychiatric examination to determine if the offender is at high risk to reoffend.

**12) PUBLIC AND COMMUNITY SAFETY:** In its deliberations during the parole hearing process, the Board shall determine that the release of an individual will not constitute a risk or threat to the physical safety and welfare of the community. In making this determination, evidence that a parole candidate has associated with convicted felons, or has threatened the lives of other(s) while incarcerated may be considered in finding that such behavior may continue if the parole candidate is released.

DO NOT REMOVE FROM LAW LIBRARY

**B.) PUBLIC RECORDS:** It is the policy of the Rhode Island Parole Board not to release any information obtained from documents or records, which are not deemed to be public records pursuant to the provisions of RI Gen. Laws §38-2-2 et al. Parole Board records are exempt from public disclosure since these records contain personal or medical information relating to an individual.

**C.) TAPE RECORDINGS:** The Rhode Island Parole Board shall record all Parole Board hearings with the use of a tape recording device, and tape recorded records of all hearings shall be maintained by the Executive Secretary for a period of three (3) years and shall not be deemed a public record.

**D.) ACTIONS BY CHAIR:** The Chair of the Board is authorized to act for the Board between scheduled meetings in rescinding warrants, amending parole permits and otherwise controlling the supervision of parolees. Any such actions are subject to ratification by the Board or a subcommittee thereof at a scheduled meeting.

**E.) OUT-OF-STATE INMATES:** Inmates will be considered in absentia, unless they request teleconferencing or videoconferencing. Inmates who have been involuntarily transferred out of state may request that the Department of Corrections arrange for their transport back to Rhode Island to attend the parole hearing.

**F.) COMMUNITY SUPERVISION FOR CHILD MOLESTATION OFFENSES:** Pursuant to Rhode Island General Law §13-8-30 the Parole Board will impose terms and conditions of community supervision on persons convicted of first and second degree child molestation at the completion of offender's prison sentence or probationary term.

**G.) VICTIMS:** Victims who request a meeting with the Parole Board may meet with the Board privately. The Parole Board will not inform inmates that victims met with the Board, and no information from such meetings will be shared with inmates, without consent from victims. Further, victims must consent to media coverage (television, radio, newspaper) of their meeting with the Board. Victims who meet with the Parole Board must feel free to express their opinions and feelings about the inmate's application for parole and possible release from prison without concern about possible retribution (from the inmate or any other party) or invasion of their privacy. This policy is intended to comply with RIGL §12-28-2 (Victim's Rights), which requires that all crime victims be treated with dignity, respect and sensitivity in all phases of the process. This policy is consistent with RIGL§ 42-46 (Open Meetings), which recognizes as a legitimate exception any discussions of the physical or mental health of a person or persons.

DO NOT REMOVE FROM LAW LIBRARY