APPENDIX V.



(b) of this section to require that the defendant serve ten years of concurrent life sentences and an additional ten years on a consecutive life sentence before becoming eligible for parole. DeCiantis v. State, 666 A.2d 410 (R.I. 1995).

**13-8-14. Release criteria.** — (a) A permit shall not be issued to any prisoner under the authority of §§ 13-8-9 -13-8-13 unless it shall appear to the parole board:

(1) That the prisoner has substantially observed the rules of the institution in which confined, as evidenced by reports submitted to the board by the director of the department of corrections, or his or her designated representatives, in a form to be prescribed by the director;

(2) That release would not depreciate the seriousness of the prisoner's offense or promote disrespect for the law;

(3) That there is a reasonable probability that the prisoner, if released, would live and remain at liberty without violating the law;

(4) That the prisoner can properly assume a role in the city or town in which he or she is to reside. In assessing the prisoner's role in the community the board shall consider:

(i) Whether or not the prisoner has employment;

(ii) The location of his or her residence and place of employment; and

(iii) The needs of the prisoner for special services, including but not limited to, specialized medical care and rehabilitative services; and

(5) That any and all restitution imposed pursuant to § 12-19-32 has been paid in full, or satisfactory arrangements have been made with the court if the person has the ability to pay. Any agreement shall be in writing and it is the burden of the person seeking parole to satisfy the parole board that this requirement has been met. Any person subject to the provisions of this section may request an ability to pay hearing, by filing the request with the court which imposed the original sentence.

(b) In the case of a prisoner sentenced to imprisonment for life who is released on parole and who is subsequently convicted of a crime of violence as defined in § 11-47-2, the conviction shall constitute an automatic revocation of parole and the prisoner shall not be eligible for parole thereafter.

(c) In the case of a prisoner convicted of a crime of violence as defined in § 11-47-2 and subsequently released on parole, should the prisoner, while on parole, commit an offense which results in a sentence of imprisonment for life, the conviction shall constitute an automatic revocation of parole and the prisoner shall not thereafter be eligible for parole.

**History of Section.**
P.L. 1976, ch. 223, § 2; P.L. 1980, ch. 292, § 1; P.L. 1989, ch. 419, § 1; P.L. 1995, ch. 94, § 2.

NOTES TO DECISIONS

**1. Denial of Parole.**

Minimal due process requires that any parole denial be accompanied by a written statement from the parole board, containing the grounds for the decision and the underlying factors supporting those grounds, sufficient to enable a reviewing court to determine whether parole was denied for permissible reasons. State v. Ouimette, 117 R.I. 361, 367 A.2d 704 (1976); State v. Tillinghast, 609 A.2d 217 (R.I. 1992).

Where there was nothing in the record to indicate that the parole board deviated from its clearly established guidelines when it denied a request for parole, there was no violation of due process. Estrada v. Walker, 743 A.2d 1026 (R.I. 1999).

**13-8-14.1. Parole standards.** — (a) At least once each calendar year the parole board shall adopt standards to be utilized by the board in evaluating applications for parole of persons convicted of a criminal offense and sentenced to the adult correctional institutions. These standards shall establish, with the range of parole eligibility set by statute, the portion of a sentence which should be served upon conviction for each category of criminal offense prior to parole, and shall serve as guidelines for the board in making individual parole determinations.

(b) The board shall consider the applicable standard prior to rendering a decision on a parole application, and may make a determination at variance with that standard only upon a finding that the determination is warranted by individualized factors, such as the character and criminal record of the applicant, the nature and circumstances of the offense or offenses for which the applicant was sentenced, the conduct of the applicant while incarcerated, and the criteria set forth in § 13-8-14.

(c) In each case where the board grants an application prior to the time set by the applicable standard or denies an application on or after the time set by that standard, the board shall set forth in writing the rationale for its determination.

**History of Section.**

P.L. 1982, ch. 375, § 10; P.L. 2000, ch. 109, § 22.

**Reenactments.** The 2002 Reenactment added the subsection designations.

NOTES TO DECISIONS

ANALYSIS

1. Constitutional right.
2. — Ex post facto clause.
3. Life sentence.

**1. Constitutional Right.**

This section creates a cognizable liberty interest in the Rhode Island parole scheme. Petrarca v. Rhode Island, 583 F. Supp. 297 (D.R.I. 1984); Bishop v. State, 667 A.2d 275 (R.I. 1995).

**2. — Ex Post Facto Clause.**

The application of parole-board guidelines promulgated after the defendant's murder conviction to his application for parole did not constitute a violation of the defendant's constitutional rights under the ex post facto clause. State v. Tillinghast, 609 A.2d 217 (R.I. 1992).

**3. Life Sentence.**

The parole board did not act arbitrarily in denying the request for parole of a prisoner convicted of first-degree sexual assault in 1981 and sentenced to life imprisonment, because the prisoner was not eligible for parole until he had served at least 15 years. The Rhode Island Parole Board Guidelines provide that "a person convicted and sentenced to prison on a charge of first-degree sexual as-