JH

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STEPHEN MATTATALL<br>Plaintiff<br>v.<br>STATE OF RHODE ISLAND &<br>RHODE ISLAND PAROLE BOARD<br>Respondant | INDICTMENT No. K1/83-0012A<br>CA 07 234ML |

*MEMORANDUM OF LAW*

Although the Parole Board is not mandated to hold hearings at any specific interval, it nevertheless should grant the plaintiff a hearing at reasonable intervals in order to review underlining reasons for the last established status of the plaintiff before the Board. Plaintiff had one (1) parole hearing five (5) years ago and recently was told by the Board that they will see him in another three and a half (3½) years. Thats eight and a half (8½) years with no meaningful eligibility.

In the GREENHOLTZ case, the Court stated that the state statute is phrased in such a way that it creats a legitimate claim of entitlement and not just a unilateral hope for parole. However, whether a state statute provides a protectable entitlement is a question that must be decided on a case by case basis. GREENHOLTZ, v. INMATES OF NEBRASKA PENAL AND CORRECTIONAL COMPLEX, 442, U.S. 1,

99 S.Ct 2100, 60 L.Ed.2d 668 (1979).

The plaintiff further argues that he has been denied equal protection of the law in that if the Board can point to no particular second degree murder candidates, with similar and number of felony convictions who have served more time, than the Board has some explaining to do. Plaintiff relies upon PARKER v.CORROTHERS, 750 F.2d 653, 662-63 (1984), which quotes U.S. ex. rel. SCOTT v. ILL. PAROLE AND PARDON BD., 669 F.2d 1185, 1901 (7th Cir.) cert. den. 459 U.S. 1048, 103 S.Ct 468, 74 L.Ed.2d 617 (1982), the Court indicated that it is inadequate to deny parole with a boilerplate explanation that parole would depreciate the severity of the crime for which the inmate is imprisoned. The Court noted that if the decisionmaker paroles some inmates convicted of murder, but denies parole to other inmates on the ground that they were convicted of murder, it must explain why the particulars of the murder and the sentence in the denied inmates case justified deferral of parole release. The Board could also indicate that the severity of the offence, in combination with other factors, calls for deferral of parole release. In sum, the Board may deny Parker parole release because of the severity of her criminal act and sentence, but it must explain in more than boilerplate generalities why the severity of her particular offence and sentence requires deferral of parole.

Plaintiff in the instant case, claims that he is entitled to rebut evidence contained therein which he assumes to be inaccurate, by the denial of the Parole Board. Plaintiff has no way of knowing why or what reasons were utilized to deny him parole after serving

twenty-four (24) years.

The PARKER, case, supra, quotes the United States Supreme Court decision in WILLIAMS v. MISSOURI Bd. of PROBATION and PAROLE, 585 F.2d 922, 925, 26 (8th Cir. 1978), vacated and remanded, 442 U.S. 926, 99 S.Ct 2853, 61 L.Ed.2d 293 (1979)(WILLIAMS 1 & WILLIAMS 11, 661 F.2d at 699-700, and EVANS, 662 F.2d at 526, we set forth the standards governing inmate access to files. These standards balance the need to remove inaccurate information from the files with the states need to preserve the confidentiality of sources of information and to preserve security and discipline in its institutions.

The Rhode island Supreme Court correctly characterized GREEN HOLTZ, supra, and found that the statute in Rhode Island did create a liberty interest in parole. PETRARCA v. STATE of RHODE ISLAND, 583 F.Supp 297, 298-99 (1984), states, "We can accept respondant's view that the expectancy of release provided in this statute is entitled to some measure of constitutional protection." 442 U.S. at 12, 99 S.Ct. at 2106. Therefore, this Court will compare the Rhode Island parole scheme at various times to the one in GREENHOLTZ in which the United States Supreme Court found a constitutionally protected liberty interest.

PETRARCA, supra, page 300 states, "By its use of 'shall not'/ 'unless' language in these versions of § 13-8-14, the legislature has modified only the Board's discretion to release a prisoner before these criteria are met-- it has not modified the Board's discretion to keep a convict in prison for any amount of time, up to

his maximum sentence, after he has met these criteria. He therefore has no meaningful expectation of parole at any given time.

[1] However, the enactment of R.I. Gen. Law § 13-8-14 did put a cognizable liberty interest in the Rhode Island scheme. Section 13-8-14.1 states:

Parole Standards.- At least once every calender year commencing on January 1, 1983, the parole board 'shall adopt' standards to be utilized by the said board in evaluating applications for parole of persons convicted of a criminal offence and sentenced to the Adult Correctional Institutions. Said standards 'shall' establish, with the range of parole eligibility set by statute, the portion of a sentence which 'should' be served upon conviction for each category of criminal offence prior to parole, and 'shall serve' as guidelines for the parole board in making individual parole determinations. The board 'shall consider' the applicable standard prior to rendering a decision on a parole application, and may make a determination at variance with that standard only upon a finding with that standard only upon a finding that such determination is warranted by individualized factors such as the character and criminal record of the applicant, the nature and circumstances of the offence or offences for which the applicant was sentenced, the conduct of the applicant while incarcerated, and the criteria set forth in § 13-8-14. In each case where the board grants an application prior to the time set by the applicable standard or denies an application on or after the time set by that standard, the board shall set forth in writing the ration-

al for its determination.

Id. (inserted by 1982 R.I. Pub. Laws ch. 375 § 10 (emphasis added).

Rhode Island Gen. Laws § 13-8-14.1 limits the great discretion conferred on the Parole Board by the earlier statutes. Although the Board is able to set its own guidelines it is also required to follow them. Although the 'such as' language of the third sentence appears to allow the board to consider factors other than those specifically enumerated in either § 13-8-14.1 or § 13-8-14, this language vests the board with no more discretion, and probably less, to consider other criteria than that conferred on the Nebraska parole bo||rd by the "catch all" provision of the Nebraska statute. Moreover, the mandory language of § 13-8-14.1 combined with the requirement of written guidelines (which was not present in the Nebraska scheme) make the present Rhode Island scheme resemble the federal one. See 18 U.S.C. § 4206.

In GREENHOLTZ, supra, the Supreme Court in considering a Nebraska statute that was considerably more restrictive than § 13-8-14, rejected a prisoner's contention that the language of the statute created a "protectable expectation of parole", point||ng out that the existanc|| of a mere statutory expectation did not mandate repeated adversary hearings in order to continue a convict's confinement. Id. at 14, 99 S.Ct. at 2107, 60 L.Ed.2d at 679-80.

**DUE PROCESS**

In the case of STATE v. QUIMETTE, 367 A.2d 704, 710 (1976),

prisoner's are entitled to some due process protections. The R.I. Supreme Court said, "Defendant's criminal record and seriousness of his crime were relevant factors to be considered by the Board but the Board in noting 'record and present behavior' as reasons for denial of parole was not sufficiently specific to satisfy requirements of process, and the Board would be required to give defendant opportunity to renew parole application and recieve a decision based on standards judicially set forth. The grounds for the decision and the underlying factors supporting those grounds should be the essential elements of the statement of reasons".

Remanded with instructions to order the Parole Board to grant a new hearing because the Parole Board did not give specific enough reasons to apprise defendant of the factors considered in denying him parole.

MATHEWS v. ELDRIDGE, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) Id., at 14, 99 S.Ct. at 2107. The Court further stated that the mere existence of a statutory expectation "cannot mean that in addition to the full panoply of due process required to convict and confine there must also be repeated adversary hearings in order to continue the confinement." Id. Rather, the Court held that when an inmate has an opportunity to review the material in his parole file and to demonstrate to the parole board that parole is appropriate in his case, "this procedure adequately safeguards against serious risks of errors and thus satisfied due process, " 442 U.S. at 15, 99 S.Ct at 2108.

Quoting SOLOMON v. ELSEA, 676 F.2d 282, 287, "It is the extenuating circumstances of the particular offence, not the nature of the violation categorizing him in the guidelines, which must make up the necessary good cause. The reasons given by the Commission must go beyond those covering the salient factor score and the offence severity rating. LITTLE v.HADDEN, 504 F.Supp 558, 562 (D.Colo.1980)".

SOLOMON, supra, p. 228, "In relying on information that has not been proved in an adversary setting, the Commission runs the risk of relying on inaccurate information. Partly for this reason, prior to the parole hearing prisoners are to be given reasonable access to documents which will be used in making the parole determination. See U.S.C. § 4208(b)(2). At a hearing an inmate is to be given an opportunity to present and to respond to evidence. See U.S.C. §§ 4207 and 4208(e). In the event that a prisoner disputes the information presented, the Commission is bound to a burden of proof for evaluating the conflicting claims. C.F.R. § 2.19(c).

If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence statdard, that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability".

SOLOMON, supra, p. 289, note 11, "Because it is highly significant facts which are reviewable by the court, it has been held that when contested facts appear to be highly significant to a decision by the Parole Commission, a defendant should be permitted to prove con-

trary facts in an adversary hearing on his petition for a writ of habeas corpus. See COX v. BENSON, 548 F.2d 186, 188 (7th Cir. 1977).

SOLOMON, supra, "Courts have the authority to review decisions by the Commission which show an abuse of discretion. This review cannot be made without some inquiry into the evidence relied upon by the Commission to support its expressed reasons for the denying parole.

See note 15, on page 290, In HEARN V. NELSON, 496 F.Supp 1111 (D. Conn 1980), the petitioner had been incarcerated for 66 months after a conviction for conspiring to distribute narcotics (heroin). He originally had been sentenced to consecutive three and twelve year prison terms. The Parole Commission gave HEARN a salient factor score of 9 and rated his offence severity as "high". The parole guidelines recommended a prison term of 14-20 months. The petitioner had an excellant institutional and prior work record. His post release program included a definate employment plan with steady family, church and community involvement.

The district court, in issuing the writ of habeas corpus, stated that a strong inference that the Commission had failed to consider favorable information is created when an abundance of information favorable to the petitioner is coupled, with a disparity between the period of incarceration suggested by the guidelines and this period actually served. HEARNS, at 1115. The district court also noted that HEARNS was denied parole without any explanation of 'why...petitioner's specific criminal actions justified denial of parole.'" Id, at 1116. This factor is absent in SOLOMON's determination.

SOLOMON, Note 2, "the statute provides an inmate with a legiti-

mate expectation of parole which is entitled to constitutional protection, (as in GREENHOLTZ), See United States ex.rel. SCOTT v. ILL. Parole and Pardon Board, 669 F.2d 1185 (7th Cir. 1982).

In a First Circuit decision the Court says that the language in SCOTT, supra, (P. 1185), is sufficiently analogous to that discussed in GREENHOLTZ. In BRENNAN v. CUNNINGHAM, 813 F.2d 1, 8, "The SCOTT court alalyzed a statute stating that the parole board "shall not" grant parole in the presence of certain enumerated circumstances. It held that such language was sufficiently analogous to that discussed in GREENHOLTZ where a statute stated that a parole board "shall" grant parole "unless" certain conditions exist. See SCOTT, supra, at 1188. The SCOTT court so held dispite its recognition that the negitive formulation left greater room for a discretionary interpretation of the statute than the positive formulation in GREENHOLTZ.

In SCOTT, supra, 699 F.2d 1189, the court interpreted Illinois' parole release statute and determined that under it "parole must be granted if none of the specific reasons for denial are found to exist".

Also in SCOTT, supra, p. 1188, we held that due process requires only that the Board inform an inmate of what in his record the Board felt warranted denial of parole and why.

The Court in MATHEWS v. ELDRIDGE, 424 U.S. 319, 335, 96 S.Ct. 893, 903,47 L.Ed.2d 18(1976), said in quoting GREENHOLTZ,442 U.S. at 15, 99 S.Ct. 2108, "when an inmate has an oppertunity to review the material in his parole file and to demonstrate to the parole board that parole is appropriate in his case, 'this procedure adequately safeguards against serious risks of error and thus satisfies due pro-

cess'". The Illinoise statute, which we held in SCOTT was the "mirror image" of the Nebraska statute considered in GREENHOLTZ, complies with due process in this respect, sufficiently protecting plaintiff from the risk that his parole determination will be based on erroneous information.

**STATE v. EDWARD ACQUISTO**

619 A.2d 428

Life sentence is considered 30 years when computing the parole eligibility of an inmate serving a life sentence. It would have been completely justified in a ruling that a prisoner would not have been eligible for parole for twenty (20) years.

**OPINION**

Also that a defendant must work his way from maximum security into a lesser-confinement status before the board would feel comfortable in paroling him.

**LERNER v. GILL**

**463 A.2d 1365**

A habitual criminal can be paroled by virtue of § 13-8-12 after serving at least five (5) years of the twenty-five (25) year enhancement period described in § 12-19-21.

**AGGREGATE:** Definition = considered as a whole collectively.

**COLLECTIVE:** Definition = involving all members of a group as distinct from its individuals.

**RHODE ISLAND PAROLE BOARD GUIDELINES**

R.I. General Law 11-23-1 MURDER SECOND DEGREE,= a person convict-

ed and sentenced to prison on a charge of second degree murder, as defined in § 11-23-1, should serve two thirds (2/3) or no more than fifteen (15) years of his / her sentence before being considered for parole release.

R.I. General Law 12-19-21 HABITUAL CRIMINAL = The Habitual criminal, as defined in R.I. Gen. Law § 12-19-21 should serve two thirds 2/3 of his/ her sentence before being considered for parole release unless the sentencing court, pursuant to R.I. Gen. Law 12-19-21 has set a later date for consideration.

RHODE ISLAND PAROLE BOARD POLICY STATEMENT AS ADOPTED MARCH 28,2006.

A.( The Rhode Island Parole Board will use the following major criteria in determining whether to grant or deny parole).

1.) SERIOUSNESS OF THE OFFENCE.

In general, it is not the policy to deny parole solely on the basis of the nature and circumstances of the offence; there are, however, certain instances where denial on this basis may be warranted.

2.) PRIOR CRIMINAL RECORD

The board will consider the inmate's prior adult record in order to determine the extent of his/ her involvement in crime-oriented activities. The board is primarily concerned with the number of and seriousness of the inmate's convictions. The board will also consider the parole candidate's responce to prior community supervision and

whether the present offence was committed while on probation or parole. A pattern of continual arrests will be interpreted as an indication that the subject is unlikely to succeed on parole, and is of high risk to reoffend.

The board reserves the right to deviate from the guidelines to take into consideration mitigating factors, of aggravating, such as probations, suspended sentences, arrests, and the seriousness and extent of the offences.

3.) INSTITUTIONAL ADJUSTMENT

The board will consider the inmate's participation in and responce to the programs available to him/ her and his/ her overall compliance with institutional regulations. Although a satisfactory adjustment to prison life will not guarantee that the subject will be paroled, it greatly increases the probility of parole, because obediance to institutional rules is taken as an indication that the candidate will comply with parole conditions.

7). PSYCHOSOCIAL CHARACTERISTICS

The board will consider subjects work record, level of education, occupational skills, emotional stability as contained in recent psychological reports, and history of mental hospitalizations. Drug and alcohol abuse, will also be considered which seriously diminishes the likelyhood that the candidate can succeed on parole.

The board will assess the inmate's participation in the substance abuse treatment programs.

9.) PAROLE PLAN

The Board will consider the strength of the parole candidate's social ties, including whether the subject has a supportive family, resources available in the community, and job opportunity. It is necessary for prospective parolees to have secure job plans and stable living arrangements upon return to the community, since these factors are strongly related to the successful completion of parole.

A.) job offer must be on official company stationary; a residence letter, which shall contain the address and phone number of the residence with a brief statement by the occupant indicating a willingness to have the parole candidate reside at that location; and, any or all, supportive letters and certificates of program certificates.

All of the previously underlined criteria was either followed or earned by this plaintiff, (parole candidate), to the letter. The plaintiff has everything going for him to be a productive member of society. Plaintiff feels he's met all the requirements of the Rhode Island Parole Board's guidelines and R.I. Gen Laws § 13-8-14; and § 13-8-14.1.

Under 12, (c), of the Parole Boards guidelines, a tape of the hearings is to be kept for three (3) years, as a public record. Plaintiff wishes to utilize this recording to prove that he has met

with all the criteria which has been set by the Parole Board and Rhode Island General Laws, § 13-8-14; and § 13-8-14.1.

## RELIEF

If the standards prescribed in **STATE v. QUIMETTE,** 117 R.I. 331, are utilized, the plaintiff's contention will be resolved. Plaintiff seeks to obtain injunctive and/ or declatory relief for unconstitutional actions by the R.I. Parole Board.

Plaintiff prays this court will declare that the plaintiff is entitled to a statement of reasons under Section § 13-8-14, and the due process standards established in STATE v. QUIMETTE, supra, and why any individualized factors in his case do not constitute a basis for the granting of parole to the time fixed in the applicable standard., i.e., to tell plaintiff exactly what is expected of him to be seriously considered for a favorable decision when he next sees the Board.

Further, the Plaintiff asks that said judgement will further provide that the Board shall afford him reasonable opportunity at reasonable intervals to present changes in the factors previously utilized in the formation of the Board's decision.

June 15, 2007
DATE

Stephen R Mattatall
STEPHEN R. MATTATALL #56259
pro se'

Medium One Security (AR-15T)
Post Office Box 8274
Cranston, Rhode Island
02920

**CERTIFICATION**

I, the undersigned, hereby swear and certify that I have mailed a true and correct copy of the enclosed documents to the Office of The Attorney General, 150 South Main Street, Providence, Rhode Island, 02903, via First Class Mail and a copy to the Legal Department of the Adult Correctional Institutions, 40 Howard Avenue, Cranston, Rhode Island, 02920, via INTERDEPARTMENTAL Mail, on the 15TH day of June, in the year 2007.