UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Stephen R. Mattatall<br>v.<br>State Of Rhode Island &<br>Rhode Island Parole Board, et, al. | | C.A. No. 07-234ML |

OBJECTION TO STATE'S MOTION TO DISMISS

In reference to **QUASI JUDICIAL IMUNITY**, the members of the Rhode Island Parole Board are not judges'. And even if they were Plaintiff would have the rights of an adversary system and the right to appeal unsatisfactory decisions in relation to violations of civil rights.

When a parole board ignores it's own guidelines without good reason(s), as per R.I. General Law(s) 13-8-14.1- "...may make a determination at variance with that standard ONLY upon a finding that such determinationis warranted.... According to PATRARCA v. STATE OF RHODE ISLAND- page 5-" the parole board is able to set it's own guidelines, it is also required to follow them. In plaintiff's case the guideline for second degree murder, as defined in § 11-23-1, should serve (2/3) or no more than fifteen years of his / her sentence before being considered for parole release. Under § 12-19-21, an habitual criminal can be paroled by virtue of § 13-8-12 after serving at least five (5) years of the twenty-five (25) year enhancement period described in § 12-19-21, the HABITUAL OFFENDER STATUTE. Also

the habitual criminal, as defined in § 12-19-21 should serve (2/3) two thirds of his / her sentence before being considered for parole release unless the sentencing court, pursuant to § 12-19-21, has set a later date for consideration.

In Petrarca, supra, p. 5-, it states our liberty interest in Rhode Island is greater than that of GREENHOLTZ v. INMATES OF NEBRASKA PENAL AND CORRECTIONAL COMPLEX, 442 U.S. 1, 99 S.Ct 2100, 60 L. Ed. 2d 668 (1979), and makes Rhode Island more like the federal scheme.

On page 6 of the states MEMORANDUM IN SUPPORT OF 12(b)(6), its claimed that "The parole board members carefully reviewed the Plaintiff's record in denying his parole request," Whats odd about this statement is the fact that although Mrs. Holley's name appears in the minutes along with Mr. Gallo and Mr. Bennett, she had left the medium facility aproximately an hour and a half to two hours prior to plaintiffs' parole hearing. Whats also confusing is the fact that Mr. Reamer Ph.D stated that he believed plaintiffs' discription of the events after hearing plaintiff reiterate the same events which was described to the parole board five (5) years earlier.

The following is plaintiff's responce to page 6 of the state's MEMORANDUM IN SUPPORT OF 12(b)(6). By Stating,"the length of my sentences the state claims there is and should be a real concern if the Board were to grant the plaintiffs' parole request." Although that issue is always a concern, the next sentence is worrisome and doubtful. To quote the parole minutes, "The Parole Board members carefully reviewed the Plaintiff's record in denying his parole re-

quest and given the circumstances, the Board was not arbitrary or capricious in denying the plaintiffs' parole request."

The latter sentence, at best could only be facticious as shown bt the distinction between the minutes of both parole hearings. However, the statute creates a presumption that parole release will be granted and that this in turn, creates a legitimate expectation of release absent a requisite finding that one of the justifications for deferal exists. Thats PATRARCA v. STATE, 583 F.Supp. 297, 299 (March 23,1984) quoting GREENHOLTZ v. INMATES OF THE NEBRASKA PENAL & CORRECTIONAL COMPLEX, [**7], at 11-12, 99 S.Ct. at 2106 (Court describing prisoners' argument).

In PATRARCA, SUPRA, "the enactment of Rhode Island General Law § 13-8-14.1, did put a cognizable liberty interest in the Rhode Island scheme.

R.I. General Laws § 13-8-14.1 limits the great discretion conferred on the Parole Board by the earlier statutes. Although the Board is able to set its <u>own guidelines</u>, it is also required to follow them. Although the "such as" language of the third sentence appeared to allow the board to consider factors other than those specifically enumerated in either § 13-8-14.1 [**12] or § 13-8-14, this language vests the board with no more discretion, and probably less to consider other criteria that that conferred on the Nebraska parole board by the "catch all" provision of the Nebraska statute. Moreover, the mandatory language of § 13-8-14.1 combined with the requirement of written guidelines (which was not present in the

Nebraska scheme resembled the federal one. See 18 U.S.C. § 4206.

A liberty interest is apparent from R.I.Gen. Law § 13-8-14.1. A parole consideration must be meaningful and in compliance with statutory standards and its own regulations, however, federal court intervention would be appropriate where applicable standards were not adhered to and Commission's determination was not meaningful. United States v. WIGODA, (1976, N.D. Ill. 417 F.Supp 276.

In plaintiff's case the parole boards guidelines say, "second degree murder, as defined in § 11-23-1, should serve (2/3) two thirds or no more than fifteen (15) years of his / or her sentence before being considered for parole release. (no more than 15 years).

The Rhode Island General Law 12-19-21 HABITUAL OFFENDER STATUTE says he or she shall serve two thirds (2/3) of the sentence before being considered for parole release unless the sentencing court, pursuant to 12-19-21 has set a later date for consideration.

An Habitual Offender can be paroled by virtue of § 13-8-12 after serving at least five (5) years of the twenty-five (25) year enhancement period described in § 12-19-21.

Between the sentencing court setting the time as eighteen years before plaintiff was to be seen for the first time for his parole consideration and the R.I. General Laws, supra, the guidelines had plaintiff parole eligible long ago,(perhaps six years).

The bottom line on plaintiff's parole denials is;

He has served twenty-four years in prison. Plaintiff has done everything in his power to change his life around and adhere to the institutional rules and parole guidelines. (See Title 42 USCS § 1983).

The Board voted to deny plaintiff's initial parole application in January 2001. They said they would see him again in five (5) years. Subsequently, (after five yrs.), the Board sent him away saying they would see him again in three and a half (3½) years. Thats eight and a half years with the same rubber stamped reason for denial i,ie., " to parole Mr. Mattatall would depreciate the seriousness of his criminal offence". That's entirely inconsistent with the Board's express policy of periodically reviewing the eligibility of all inmates after they innitially become eligible for parole. This was one of the arguments in BISHOP v. MORAN, 676 F.Supp. 416, 423 (D.R.I. 1987) which states, "The Board has chosen to consider for possible release all inmates every six months to one year after the inmate first became eligible for parole. That is the Boards policy.

It must be inferred from this that the Board realistically considers these inmates to be possible candidates. Yet implicit in the Board's justification for excluding out-of-state inmates is the presumption that they are not possible candidates. The Board's justification therefore, is entirely inconsistent with its express policy of periodic review.

Appearing before the board to ask questions and to speak on his behalf inspires the inmate, not unjustifiably, to believe that he is actively participating in critical decisions conserning his rehabilitation and future confinement, that he is not just a name on a piece of shuffled paper.

A distinction based upon an unsupportable assumption about a particular group conflicts with the guarantees of equal protection.

See KIRCHBERG v. FEENSTRA, 609 F.2d 727, 733 (5th CIR. 1979), aff'd 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1980).

LIBERTY INTEREST

PETRARCA, supra, p. 300. However, the enactment of R.I. General Laws § 13-8-14.1 did put a cognizible liberty interest in the Rhode Island scheme. Section § 13-8-14.1 states: Parole standards shall establish, with the range of parole eligibility set by statute, the portion of a sentence which should be served upon conviction for each category of criminal offence prior to parole, and shall serve as guidelines for the board in making individual parole determinations. The board shall consider the applicable standard prior to rendering a decision on a parole application, and may make a determination at variance with that standard only upon a finding that such determination is warranted by individualized factors such as character and criminal record of the applicant, the nature and circumstances of the offence or offences for which the applicant was sentenced, the conduct of the applicant while incarcerated, and the criteria set forth in § 13-8-14.

SIX MONTH TO ONE YEAR PAROLE INTERVALS

In 1987 Mr. Pederzani, (Secratary for Parole Board) testified there were two types of parole hearings. After the initial hearing, the Board's policy is to review an inmate's eligibility every six months to a year. BISHOP v. MORAN, 676 F.Supp. 416, 419 (D.R.I. 1987). The R.I. District Court went even further than GREENHOLTZ, SUPRA, which was decided prior to BISHOP, supra, See p. 420 n.4., because

the Nebraska Parole Board permitted all inmates to attend these review proceedings, the Court did not reach the issue of whether attendance was in fact constitutionally required. See id. at 16 n.8, 99 S.Ct. at 2108 n.8.

EQUAL PROTECTION

There is no fair and substantial relation to see plaintiff two times in eight and one half ($8\frac{1}{2}$) years and reiterate the same excuse for not granting parole, especially after the Board stated, " The Board was impressed with his program participation and insight." The reason for eight and a half ($8\frac{1}{2}$) years of denial being repeated quote, "the reason for denial is to parole Mr. Mattatall would depreciate the seriousness of his serious offence and criminal history."

RES JUDICATA

Plaintiff, has never, contrary to what the state claims, had his day in court as far as the 'factual basis' to accept the 1979 plea nor the coersive effect of the offer of such a so-called deal. The 'driving to endanger, death resulting' charge was used to deem the plaintiff an habitual offender under R.I. Gen Law 12-19-21, even though the attorney general and the trial judge knew that Plaintiff was 'actually innocent' of that charge. (APPENDIX III).

The state says on pages six (6) and seven (7), "Plaintiff first challenged the use of his 1979 ALFORD plea as a basis for sentencing him as an habitual offender during the trial and sentencing attendant to his murder conviction. This challenge was rejected by the trial court and this rejection was upheld by the Rhode Island Supreme Court in STATE v. MATTATALL, 603 A.2d 1098 at 1118 (R.I. 1992) wherein the

Court held that:

" When a defendant enters an ALFORD plea, which is accepted by the court, then such plea in a later proceeding constitutes a conviction, irrespective of the fact that the defendant maintains his innocence and does not stand up and confess guilt."

This is apples and oranges. The state tries to mold the Rhode Island Supreme Court's OPINION, to suit its own agenda but, the argument it two different issues. It's also two (2) different cases. So, the state quoting STATE v. BURKE 876 A.2d 1109 (R.I. 2005) is not even close to being on point.

The same can be said in opposition to the states arguments (EXHIBITs (A) & (B)), on page seven (7), of thier MOTION TO DISMISS. Plaintiff reiterates, "this issue hasn't been litigated so, he has never had his day in court on said issue, as claimed on page eight (8), of states MOTION TO DISMISS.

Plaintiff has, as it states on page seven (7), a case presently pending in the Rhode Island Supreme Court, but its not a post-conviction. It was filed as a Writ of Certiorari attacking the 'nature of the plea in the 1979 driving to endanger, death resulting case, which has never been litigated in any court. Incidently, Plaintiff claims the state is responsible for his attempts to weasel out of the consequences of this plea. Plaintiff is doing additional 20 years for being a pasenger in an automobile, during an accident.

NO MEANINGFUL CONSIDERATION FOR PAROLE

DUE PROCESS VIOLATION

The Parole Board denied plaintiff parole solely on the basis of

plaintiff's past criminal history. This 'liberty interest' is a civil rights violation under the Fifth and Fourteenth Amendments of the Due Process Clause in the United States Constitution. See SCARPA v. U.S. BOARD OF PAROLE, (1972, CA5 Ga) 468 F.2d 31 on reh (CA5 Ga) 477 F.2d 278, vacated on other grounds 414 US 809, 38 L.Ed. 2d. 44 94 S.Ct. 79 conformed to (CA5 Ga) 501 F.2d 992.

## JURISDICTION

Use of guidelines does not usurp legistative function of determining appropriate punishment for crime. HAWKINS v. U.S. PAROLE COMM, (1981, ED Va 511 F.Supp. 460, affd without opinion (CA4 Va) 697 F.2d 881.

Early parole eligibility designation is element of order which is distinct from judgement of conviction entered upon jury's verdict of guilty and possesses necessary characteristics of independance and completeness required to be final order for appeal. UNITED STATES v. BUSIC, (1978, CA2 NY) 592 F.2d 13.

December 15, 2007

DATE

Stephen R. Mattatall pro se'

STEPHEN R. MATTATALL, prose'
IDENTIFICATION NUMBER 56259
MEDIUM ONE SECURITY (AR-18B)
CRANSTON, RHODE ISLAND
02920

CERTIFICATION

I, Stephen R. Mattatall, the undersigned, hereby swear and certify that I have mailed a true and correct co||y of the enclosed document to the Office of the Attorney General, 150 South Main St, Providence, Rhode Island, 02903, via First Class Mail and a copy to the Legal Department of the ADULT CORRECTIONAL INSTITUTIONS, 40 Howard Avenue, Cranston, Rhode Island, 02920, via, INTERDEPARTMENTAL MAIL, on this 15 th day of December, 2007.

December 15, 2007 — Stephen R. Mattatall, pro se

DATE — Stephen R. Mattatall, pro se