RECEIVED
MAR 07 2008
Property of U.S. District Court
District of Rhode Island

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

STEPHEN R. MATTATALL

V. Indictment No. K1/83-0012A

STATE OF RHODE ISLAND

AMENDMENT TO POST CONVICTION

The provisions in Title 10, Chapter 9.1 of the Rhode Island General Law(s), gives wide latitude to sentencing judges especially when its in the interest of justice. See 10-9.1-1(4).

The following nine (9) pages are violations of the rights of the petitioner according to the rehabilitive statutes mentioned in the Rhode Island General Law(s) § 42-56-1; § 42-56-18; § 42-56-19 & § 42-56-31.

January 17, 2008
DATE

Stephen R. Mattatall

Stephen R. Mattatall #56259
Medium One Security (AR-18B)
Post Office Box 8274
Cranston, Rhode Island
02920

AM I HELD TO STANDARDS OR CRITERIA THAT CONTRADICT MY PROFILE?

QUESTION! Should a man/ woman litigating in court, parish in prison and be subjected to admit culpability to a crime they haven't admitted to in order to participare in a "Rehabilitative Program"?

QUESTION! How does the prison rehab or reform someone without any diagnosed problem(s)?

QUESTION! Does not having diagnosed problem(s) warrant one, or more repeated denials at parole hearings?

QUESTION! In what direction does an inmate proseed that cannot legally participate in a program?

There are contracts not enforced by a court of law or DOC policy that program/ class instructors require an inmate to submit to and sign admitting culpability in order to participate in particular programs/ classes. Some of these programs/ classes oddly happen to facilitate the least likeliest of inmates to reoffend vs. the majority of the entire prison population.

THE SAID PROGRAMS BEING:

1.) THE SEX OFFENDER TREATMENT PROGRAM;

2.) COGNITIVE SELF CHANGE;

3.) THE MURDERS GROUP (revised), VIOLENCE REDUCTION GROUP;

4.) DOMESTIC VIOLENCE;

5.) THE SPECTRUM RECOVERY ACADEMY.

If an inmate does not submit to the criteria that entails an omission(s) to the said offence they were convicted of he/ she is

denied access to the program/class, which I have suffered from on more than one occasion, (the Spectrum Recovery Academy and the so-called Murders Group,(violence reduction group) NEADS Program).

In accordance to the R.I. Legislation policies are set forth for the DOC under Rhode Island General Law 42-56-31, to address re-hab, and they state... DETERMINATION OF CLASSIFICATION AND REHABILITATION PROGRAMS OF PRISONERS--"It shall be the duty of the classification board to review all studies made of each prisoner during the period of his or her reception and from time to time thereafter as shall be necessary to further the purposes of this chapter, and to recommend to the director the security classification and rehabilitation program for the person". And 42-56-19, stating...-EDUCATIONAL AND VOCATIONAL TRAINING UNIT.--"To most effectively assist the vocational and educational rehabilitation of each person imprisoned in the adult correctional institutions or any juvenile placed in the custody of the department, there shall be within the department of corrections an educational and vocational training unit whose duties it shall be to determine the needs and aptitude of that person and to furnish the means that shall be best designed to effect the rehabilitation".

How can these policies be afforded to individuals that do not meet the criterion? The language of the statutes are vague in this delicate area. Actually ambiguous. There is a stark difference between an individual that substantially fits the behavioral and psy-

chological profile of rehab, and an individual that is accused of a crime that they refuse to admit.

If an individual is not willing, nor cannot claim culpability to a crime in which they were convicted illegally or legally, they are restricted from particular programs/ classes. This restriction is not promulgated by law, but it is practised.

The system was not designed to address inmates in these situations. Nor has it progressed in any form to address them. However, R.I.Gen. Law § 42-56-1 --(a),(4) states: CORRECTIONAL INSTITUTIONS AND SERVICES SHOULD BE SO DIVERSIFIED IN PROGRAM AND PERSONAL AS TO FACILITATE INDIVIDUALIZED TREATMENT. I am unaware of any individualized program and or treatment to facilitate inmates in the above situation.

Besides these indiscretions, I am unable to proceed to minimum security until I am given a date of release by the parole board. Nor will I ever be classified to the 'work release' facility. I understand there is a very limited amount of beds there, (aproximately thirty (30), to thirty-five (35), available at any given time. It's an unreal expectation for any inmate with a lenghty sentence to believe they are going to be classified to Work Release. This is contrary to R.I.G.L. § 42-56-18, which states: INMATE FURLOUGHS- The classification board of the department of corrections provided for by § 42-56-30 by a vote of at least three (3) of the five (5) members and upon approval of the director, or his designee, may allow a person committed to the adult correctional institutions to leave

that place on furlough within or without the state of Rhode Island; provided that, during the period of the furlough the person furloughed shall be deemed to remain committed to confinement to the adult correctional institutions. Whether or not the person is to be accompanied on furlough shall be determined by the director, or his or her designee. The department of corrections may make an appropriate charge for the necessary expenses of accompanying a person on furlough. Those furloughs may be granted for a period of time not to exceed fourteen (14) days in any six (6) month period.

THE FOLLOWING VIOLATIONS OF A LACK
OF PERSONAL REHABILITATION HAVE OCCURRED

First of all, prior to the riot in september 1991 the adult correctional institutions had a very successful music program in each facility, under the direction of Mrs. Roberta Richmen. Each facility had hired professional musicians to teach music to the inmates. Petitioner once made a living playing music and looked upon this as a vital opportunity to hone his craft. This program was especially encouraging because inmates were allow to have their instruments in their cells to practice.

This is one of the precise reasons for the following Rhode Island General Laws:

§ 42-56-1;

§ 42-56-18;

§ 42-56-19; &

§ 42-56-31

The 'arts' department continued at the adult correctional institutions but the music program and the personal (and state) instruments were confiscated arbitrarily and capriciously, as punishment to a few musicians who had not been involved in the riot. Thats sixteen (16) years of punishment hinders rehabilitation discriminantly. A violation also under the Equal Protection clause of the Fifth Amendment .

While in medium one security in 1993-94, petitioner enrolled and graduated Marathon Inc. (inside the wall) program. It was a six (6) month, (in block) rigorous drug treatment program. The end result was that everyone who graduated was told that they would be classified to minimum security. There was one exception however. Petitioner was told that due to the length of his sentence that he would not be able to go to minimum with the rest of the graduates.

This sort of unequal treatment repeated itself in 2006-07, at The John J. Moran, medium one facility. Two times petitioner applied for and recieved interviews for a program run by Psychologist Chuck Dawson and Reverand Janice I. Thompson, entitled The Violence Reduction Group. This is a one year program for violent offences/ offenders with lengthly sentences which is said to have a positive outlook by the parole board. Petitioner was shot down twice without any type of explanation. Petitioner has been incarcerated since september 24, 1982, has completed numerous programs, stayed out of trouble for six (6) years, i.ie., The criteria was met in every way except that the applicant didn't admit culpability for the degree of murder which he was convicted. Others however,approved for this program didn't fit

the criteria originally outlined which was inmates serving life and lenghty prison sentences. Now, instead of being called the Murders Group their accepting inmates with various types of crimes, which involve violence. However, there is two inmates in the program presently serving nine (9) years, and another serving twelve (12) years. Bottom line is that they can't possibly have anywheres near the time that petitioner has served, (twenty-four years).

A recent program which the petitioner tried to get into is the N.E.A.D.s Program where inmates train dogs which live with them, for disabled persons. Petitioner submitted a request form for an interview. After waiting aproximately eight (8) months wasn't even given an opportunity to be interviewed. Petitioner confronted Captain LeFebvre for an explanation and was told, "We piched five (5) names and were not doing any more for now." Petitioner knows that his request slip was made and submitted before at least two of the inmates. Out of the five that made the grade, one was booked for threatening another inmate with a box cutter. A second inmate had recently lost his job working in the gym, for destroying state property. Petitioners discipline record has been exceptional for over six (6) years. The parole board even said they were impressed with his program participation and insight.

Lastly,petitioner sent a request for reconsideration for parole and sent a letter of 'remorse' to Ms. Scanlon and Johns children. Petitioner never recieved an answer from any board member as to said request for reconsideration. These indiscretions by persons affiliat-

ed with the adult correctional institutions have been and are still treating petitioner with complete disregard to his rehabilitation according to the Rhode Island General Laws specified. Petitioner after repeated violations and denials feels as though this is due to the length and title (habitual criminal), of his extraordinary sentence. These indiscretions at the times mentioned violated petitioners 'liberty interests; due process; ex post facto; and equal protection laws' of both The United States and Rhode Island Constitutions.

When we examine petitioners record of late, his accomplishments, and the way he has earned his own rehabilitation it should be self-evident that he has what it takes to be a productive member of society, again. He was, after all a model parolee when given a chance to be released in 1977, after serving three (3) years on a six (6) year sentence for assault with a dangerous weapon.

## DUE PROCESS

In MATTEWS v. ELDRIDGE, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) the balancing test is three (3) prong. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the physical and administrative burdens that the additional or substitute procedural requirement

would entail." Id. at 335, 96 S.Ct. at 903.

The proper focus must be on the manner in which the state has acted: 'how and when' the alleged deprivation was effected.

In the case of the music program and confiscation of the instruments, petitioner was awakened out of a sound sleep by six (6) correctional officers one day shortly after the riot (aprox. oct.1991). Petitioner was told by Correctional Officer Brian Tongue that all the instruments were being confiscated and the music program was eliminated. Since that day there has been no music program or personal instruments allowed into the adult correctional institutions.

See GOLDBERG v. KELLY, 397, U.S. at 267-68, 90 S.Ct. at 1020. ("[T]hese [due process] principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination...").

SUBSTANTIVE DUE PROCESS

Substantive due process focuses on the result of the governmental action, not its procedures. AMSDEN, 904 F.2d at 754. The First Circuit has stated that a violation of substantive due process occurs when state action is "egregiously unacceptable, outreageous or conscience- shoching."

Petitioner claims that taking away music study program and the instruments was a flagrant violation of the law which was arbitrary and capricious. As mentioned, the ARTs PROGRAM was never discontinued at the adult correctional institutions. It was only the music studies which was done away with completely, for no apparent reason. This

variance deviates from R.I. General Law(s) § 42-56-1; § 42-56-19 & § 42-56-31.

There were three (3) reasons given/ or excuses that DOC people gave for confiscating the petitioners guitars. One was because they make too much noise and bother other inmates. (but today, as they also had back then there are headphones that plug right into the instrument so, no one but the player can hear it of be affected by the sound).Petitioner knows first hand because he had such a piece of equipmentin his cell. It was said that the guitar strings could be used as a weapon or to be part of a homemade tatoo gun. (No one to my knowledge has been assualted or hurt with a guitar string & inmates are still giving themselves tatoos with sewing needles). The guitar strings were afixed to electric shavers which also have been confiscated, so none of these excuses fly.

Since there obviously isn't much more in the way of programs/ rehabilitation available to petitioner to make him a better candidate for parole, he asks that the court ORDER the parole board to give petitioner another worthwhile parole hearing and grant that application, forthwith.

January 17, 2008
DATE

Stephen R. Mattatall

Stephen R. Mattatall #56259
Medium One Security (AR-18B)
Post Office Box 8274
Cranston, Rhode Island
02920